Salaun v. Hartshorne.

FRANCIS SALAUN

v.

BENJAMIN M. HARTSHORNE.

1. A devise of land by one who holds as devisee of one who died indebted, is not such a transfer of the title as will divest the statutory lien of the creditors of the first devisor.

2. In order to induce this court to order surplus money arising upon sale of mortgaged premises to be paid to the personal representative of the owner of the equity of redemption, it is not necessary that each of the claims presented to such personal representative should be finally proved and passed upon in

this court. It is sufficient if this court shall be satisfied that it is expedient or necessary for the proper administration of the estate that such payment be made. Notwithstanding such payment, the personal representative or other person interested in the estate is at liberty to contest any of the claims reported by the representative to this court.

---

In foreclosure. On exceptions to master's report upon divers petitions for surplus money.

The surplus money arises from the sale under foreclosure of certain lands in Monmouth county of which Mrs. Mary M. O'Rourke, late of New York, died seized in November, 1890, subject to the mortgage which had been foreclosed. By will duly executed to pass real estate in New Jersey, she directed her debts to be paid out of her property, and, subject to such payment, gave all to her husband, Felix E. O'Rourke. That will was duly proven in New York in May, 1892, eighteen months after her death, and a duly-certified copy filed in the Monmouth county clerk's office in June, 1892, but no probate of it was offered or letters testamentary ever issued upon it in this state.

Before her will was proven in New York, viz., in or before November, 1891, letters of administration upon her estate were duly applied for in the Monmouth county orphans court, and, after notice given, an order was made orally, on the 27th of November, 1891, by that court, that letters of administration should issue to Frank Conover, one of the petitioners. This order, however, was not actually entered in the minutes and letters issued thereon until January, 1894. By its terms it declared that it was entered as of the 27th of November, 1891.

Felix O'Rourke, the husband and devisee of Mary, died in April, 1891, about five months after his wife, testate of a will by which he devised his property to Teressa O'Rourke and to the petitioner, Albrecht J. Lerché, who was appointed executor. This will was also proven in New York in May, 1892, more than a year after the death of the testator, and a duly-certified copy filed in the Monmouth county clerk's office in June, 1892. No offer of probate of it was made in this state or letters testa-

Salaun v. Hartshorne.

mentary issued here until December, 1893, when letters were issued to Mr. Lerché by the surrogate-general.

The bill to foreclose was filed December 17th, 1891, and the final decree was made July 2d, 1892. The sale occurred November 7th, 1892, and was confirmed November 18th, 1892.

On August 23d, 1892, after the filing of the probate copies ·of the two wills, as above stated, and after the decree for sale, but before the sale took place, the petitioner Connelly sued out an attachment from the supreme court of this state against Lerché and Teressa O'Rourke, as devisees of Felix O'Rourke, founded upon a joint indebtedness of Mary and Felix, under which writ the sheriff of Monmouth county attached the mortgaged premises. Appearance was entered to this suit, with the result that judgment final was rendered for the plaintiff against the defendants November 15th, 1892, for $16,444.34, On September 28th, 1892, eight days more than a month after the Connelly attachment had issued, but before the sale, the petitioner Wenzel sued out from the supreme court a writ of attachment against Teressa O'Rourke and Lerché, as devisees of Mary and Felix O'Rourke, under which the same premises were attached. These writs, and another issued at the suit of Connelly—three in all—were the subject of consideration by the supreme court, ·as reported in *Connelly* v. *Lerché* and *Wenzel* v. *Lerché, 27 Vr. 95.* Petitions for the surplus money were presented severally by Connelly, Wenzel, Lerché and Conover, the latter as administrator, which were referred to a special master, who reported that the money should be paid to the administrator, Conover.

To this report Lerché excepts. The other petitioners, Connelly and Wenzel, acquiesce, but waive their rights, under their judgments and attachments, only as against Conover.

*Mr. Willard C. Fisk,* for Lerché.

*Mr. Robert L. Lawrence,* for Connelly and Wenzel.

*Mr. Frank P. McDermott,* for Conover, administrator.

PITNEY, V. C.

This is, in effect, a contest as to whether Conover, the administrator of Mrs. Mary O'Rourke, or Lerché, the executor of her devisee, Felix O'Rourke, shall exercise the duty of receiving this money and paying the creditors of Mary. Those creditors are clearly entitled to be paid before those of her husband and devisee, Felix, for he took and held subject to such payment. There is, confessedly, no personalty belonging to either of the decedents, either here or in New York, nor is there other real estate sufficient to pay the claims presented; so resort must be had to this fund.

Now, I think when so much is said the matter is decided.

The sufficiency of the proof of the claim of the two principal creditors was but faintly questioned; that of Connelly was substantiated by a properly-exemplified transcript of a judgment in New York against Mary and Felix O'Rourke, and again by a judgment thereon in this state against the devisees of Felix and it was for an amount nearly equal to the whole fund.

The claim of Wenzel was based on a promissory note, supported by the affidavit of Wenzel, made in the proceedings in the Monmouth county orphans court on application for letters of administration, and again by another affidavit, which was the basis of his writ of attachment. There can be no doubt as to the *bona fides* of his claim.

It is said that Wenzel's claim is not fully proven, because he was not produced and subjected to cross-examination before the master. I do not think the practice of this court requires that the validity of the claim against the estate of the decedent, upon the strength of which the personal representative asks to have the fund paid to him, should be finally determined and passed upon as a prerequisite to paying over the proceeds of the sale of lands to the personal representative. It is sufficient if the circumstances are such as to render it expedient or necessary to the proper administration of the estate of the decedent in the orphans court. Such is, in effect, the language of the statute. *P. L. of 1876 p. 140.* Notwithstanding the action of this court in ordering the money paid over to the personal representative,

he will still be at liberty, either on his own account or at the request of any other person interested in the estate, to question the very claims for whose liquidation he asks to have the money.

It would, manifestly, lead to embarrassment, inconvenience and probably to injustice, in the present case, to pay over only a portion of the fund.

It is well settled that the statutory lien of a creditor upon the lands of his deceased debtor continues not only for a year, but until such lands are aliened by the heirs or devisees. *Haston* v. *Castner, 4 Stew. Eq. 697* (at *p. 699*); *Westervelt* v. *Voorhis, 15 Stew. Eq. 180*.

The devise by Felix O'Rourke to Lerché and Teressa is relied upon as an alienation which divested the lien in this case. But I think it comes within neither the letter nor the spirit of the act. It is not a conveyance for value, and I think such is contemplated by the statute. Not only is a valuable consideration wanting, but there is present notice to the second devisee, inherent in Felix's title, that Felix held subject to the payment of Mary's debts. The devise by Felix, at best, amounts to a voluntary alienation by a devisee of the lands devised, subject to the debts of his devisor. Such an alienation cannot have the effect of divesting the statutory lien of the debts of the first devisor. Besides, here we have the lien created by the terms of the first devise, and the proper mode of enforcing that lien is to pay the money to the personal representative, who will distribute it among the creditors according to law.

From an equitable standpoint, the right of Mr. Conover is entirely clear.

But if I had come to a different conclusion as to Conover's rights, I should have been of the opinion that Connelly's judgment in our supreme court should be paid, because it was founded on the joint debt of Mary and Felix, and was a joint judgment against Lerché and Teressa, as devisees of Felix; and further, for the same reason, I should have thought that the attachment of Wenzel was a like lien on these lands.

The order to pay over the money to the administrator of Mary will be without prejudice to the right of any person interested in the estate to contest the claims of Connelly and Wenzel, or either of them.